UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 09-12089-JLT |
| ) | |
| RONALD R. MARCIELLO, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

REPORT AND RECOMMENDATION ON THE
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

January 28, 2013

SOROKIN, C.M.J.

Pending is the United States of America's Motion for Summary Judgment, its supporting brief and exhibits, a response by defendant Century Bancorp Inc. ("Century Bank") supporting the motion, responses by Filene Federal Credit Union ("FFCU") and Sandra L. Marciello opposing the motion in whole or in part, and reply briefs thereto. See Doc. Nos. 63-69, 71, 73-77. The government also provided a supplemental brief regarding the rights of non-appearing defendants. Doc. No. 79. For the reasons that follow, the only triable issue here is whether the Court should exercise its limited discretion not to order a sale of the home in which Sandra Marciello resides. Therefore, I recommend the motion be ALLOWED in part and DENIED in part, and that partial judgment be entered as more fully set forth below.

I.      UNDISPUTED FACTS[1]

Between February 7, 2000 and November 24, 2008, the Internal Revenue Service

assessed $180,596.29 in unpaid income tax liabilities against defendant Ronald Marciello for

taxable years 1996, 1999, 2000, 2002, and 2005.  Doc. No. 63 at 2-3 (listing assessment dates

and amounts for each year).  Each assessment gave rise to a statutory lien in favor of the

government upon "all property and rights to property, whether real or personal," belonging to

Marciello.  26 U.S.C. §§ 6321, 6322.  The government filed notices of its liens with the Suffolk

County register of deeds as early as May 7, 2002 (for 1996, 1999, and 2000), with additional

notices thereafter (for all five years at issue).[2]  Doc. No. 63 at 4.  As of October 1, 2012,

---

[1]Although FFCU has opposed the government's motion, its brief contains no "concise
statement of the material facts of record as to which it is contended that there exists a genuine
issue to be tried, with page references to affidavits, depositions and other documentation," as
required by Local Rule 56.1.  This omission renders the government's statement of facts admitted
for purposes of the pending motion.  See Local Rule 56.1.  The Court has, nonetheless,
considered the facts recited within FFCU's motion, none of which contradict the facts set forth
by the government.  See Doc. No. 69 (opposing the motion primarily on legal grounds).

[2]The assessment and notice dates are as follows:
- For 1996, assessments were made on February 7, 2000 and November 14, 2005; notice
  was filed May 7, 2002 and refiled June 23, 2009; the total balance due through October 1,
  2012 was $32,203.84.
- For 1999, assessments were made October 9, 2000 and November 14, 2005; notice was
  filed May 7, 2002 and refiled November 17, 2009; the total balance due through October
  1, 2012 was $98,393.02.
- For 2000, assessments were made November 12 and 19, 2001, May 26, 2003, and
  November 14, 2005; notices were filed May 7, 2002 and July 23, 2008, then refiled
  January 7, 2011 and August 21, 2012; the total balance due through October 1, 2012 was
  $104,486.39.
- For 2002, assessments were made June 9, 2003 and November 26, 2007; notice was filed
  September 13, 2006 and refiled August 21, 2012; the total balance due through October
  1, 2012 was $23,720.70.
- For 2005, assessments were made March 6, 2007 and November 24, 2008; notice was
  filed November 13, 2007; the total balance due through October 1, 2012 was $3,244.35.
Doc. No. 63 at 2-4.

Marciello owed the government a total of $262,048.30, including interest.  Id. at 3-4.

At the time the liens arose, Marciello had ownership interests in two properties relevant to this action.  Both are located in Revere, Massachusetts: one at 34 Larkin Street, and the other at 137 Marshall Street ("Larkin Street" and "Marshall Street," respectively).  Id. at 4-8. Marciello is listed on the Larkin Street deed as a joint tenant with his mother, Grace, and his brother, Gregory.[3]  Id. at 4; Doc. No. 63-16.  The City of Revere has a property tax lien on Larkin Street.  Doc. No. 45 at ¶ 22.  The only other party with an apparent or claimed interest in Larkin Street is FFCU, which made loans to Marciello and his mother pursuant to a revolving credit agreement and note dated July 25, 1990 ("the Larkin Note").[4]  Doc. No. 63 at 5; Doc. No. 63-18. Loans made under the Larkin Note were secured by a mortgage on Larkin Street.  Doc. No. 63 at 5; Doc. Nos. 63-18, 63-19.  The Larkin Note contained the following language:

> Within the [$55,000] Credit Limit, and subject to the terms hereof, the Borrower may borrow, prepay and reborrow from the fourth business day after the date of this Agreement to the close of business on the 10th anniversary of the date hereof, or the termination of the Lender's obligation to loan in accordance with this Agreement, whichever is earlier.

Doc. No. 63-18 at 1.

By the end of February 2002, there was no outstanding balance due on the Larkin Note. Doc. No. 63-24 at 8 (account history showing a payoff, and a zero balance, on 2/25/02); see also Doc. No. 63-17 at 41.  FFCU, however, made additional loans to Marciello thereafter – beyond

---

[3]Marciello's father, Domenic, who also had an interest in Larkin Street, is now deceased. Doc. No. 63 at 4.

[4]Although the government alleged defendant American Express Company ("AmEx") held a judgment lien on Larkin Street, and defendant RBS Citizens ("Citizens") held a second mortgage on the property, neither party has appeared in this action to protect any such interests. See Doc. No. 45 at ¶ 22; discussion § III.B, infra.

"the 10th anniversary" of the Larkin Note.  See Doc. No. 63-24 at 3-8 (showing five

disbursements beginning in March 2002, and a principal balance of more than $25,000 in

January 2011).  According to FFCU, the Larkin Note's balance was $27,284.04 as of November

1, 2012.  Doc. No. 68 at 1.

A 1998 quitclaim deed reflects that Marciello and his wife, Sandra, own Marshall Street

as joint tenants with the right of survivorship.  Doc. No. 63 at 6; Doc. No. 63-20.  Century Bank

holds a valid first mortgage on the property as collateral for a note, the balance of which was

$39,308.75 on November 16, 2012.  Doc. No. 63 at 6; Doc. No. 66 at 2.  In February 2002,

Marciello and his wife obtained a line of credit from FFCU pursuant to a note ("the Marshall

Note") and secured by a second mortgage on Marshall Street.  Doc. No. 63 at 7; Doc. Nos. 63-22,

63-23.  The balance due on the Marshall Note was $64,027.12 as of November 1, 2012.  Doc.

No. 68 at 1.[5]

The government filed this action in December 2009 pursuant to 26 U.S.C. §§ 7401 and

7403, seeking to reduce the assessments for Marciello's unpaid federal income taxes to judgment

and to foreclose the tax liens on Larkin Street and Marshall Street.  Doc. No. 1; see also Doc. No.

45 (amended complaint adding Citizens as a defendant).  The only defendants to respond to the

complaint were the City of Revere, Century Bank, FFCU, and Marciello's wife.  Doc. Nos. 5, 6,

16, 18.  The Court has entered a default judgment against Marciello, Doc. No. 35, and notices of

default as to his mother, his brother, AmEx, and Citizens, Doc. Nos. 22-24, 53.  In March 2011,

upon agreement of the government and the answering defendants, the Court entered partial

---

[5]AmEx also allegedly has a lien on Marshall Street, Doc. No. 45 at ¶ 18, but it has not
appeared to assert its claim to such a lien in these proceedings.  See discussion § III.B, infra.

judgment as to priority, in the event a judicial sale of Marshall Street is ordered.  Doc. No. 43.

The partial judgment included the following determinations:

- Century Bank holds a valid mortgage on Marshall Street, and its lien is superior to the government's tax lien and any interest held by FFCU.

- Proceeds from any judicial sale of Marshall Street shall be distributed as follows: *first*, to the government for expenses incurred to secure, maintain, and sell the property; *second*, to reasonably compensate the receiver, if one is appointed; *third*, to the City of Revere for unpaid property tax assessments; and *fourth*, to Century Bank for the balance due on its note and mortgage, including interest.

Doc. Nos. 42, 43 at 2-3.  The proper distribution of any remaining proceeds from a judicial sale of Marshall Street was left for consideration and resolution at a later date.  Doc. No. 43 at 2.

On November 1, 2012, the government moved for summary judgment.[6]  Doc. No. 63.  As to Larkin Street, the government requests findings that no defendant besides Marciello and the City of Revere has an interest in the property, and that the government's tax liens have attached to the entire property.  Doc. No. 63-27.  It seeks permission to sell Larkin Street and distribute the proceeds as follows: *first*, for expenses of the sale; *second*, to the City of Revere for any unpaid property tax assessments; *third*, to the government for Marciello's unpaid federal tax assessments; and *fourth*, to Marciello (if any proceeds remain).  Id.  As to Marshall Street, the government requests a finding that its tax liens have attached to Marciello's half of the property, and it seeks permission to sell the entire property and distribute the proceeds according to the Court's prior partial judgment, and then in a manner detailed below.  Id.; see discussion § III.D, infra.

---

[6]The matter was temporarily stayed after the partial judgment was entered due to pending bankruptcy proceedings involving Marciello.  Electronic Order dated July 22, 2011.

Century Bank does not oppose the government's motion, and responded only to request that the partial judgment be given effect and to demonstrate the balance due on its mortgage secured by Marshall Street.  Doc. Nos. 65-67.  FFCU opposes the government's motion, arguing it has a valid mortgage on Larkin Street that supersedes the government's liens, and also disputing the government's proposed distribution of proceeds from any sale of Marshall Street.  Doc. Nos. 68, 69, 71.  In her opposition papers, which relate only to Marshall Street, Marciello's wife disputes the extent of Marciello's interest in the property, and argues that the Court should exercise its equitable discretion and refuse to order a sale of Marshall Street, which has been Mrs. Marciello's home for nearly thirty years.  Doc. Nos. 73-75.  Should a judicial sale of Marshall Street be ordered, Mrs. Marciello requests that the government be required to sell Larkin Street first.  Id.

II.    LEGAL STANDARDS

A.    Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); accord Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995).  The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  Even so, the Court must ignore

"conclusory allegations, improbable inferences, and unsupported speculation." <u>Sullivan v. City
of Springfield</u>, 561 F.3d 7, 14 (1st Cir. 2009).

"There must be sufficient evidence favoring the nonmoving party for a [factfinder] to
return a verdict for that party.  If the evidence is merely colorable or is not significantly
probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50.  "Trialworthiness
requires not only a 'genuine' issue but also an issue that involves a 'material' fact." <u>Nat'l
Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995).  A material fact is one
which has the "potential to affect the outcome of the suit under applicable law." <u>Nereida-
Gonzalez v. Tirado-Delgado</u>, 990 F.2d 701, 703 (1st Cir. 1993).  For a factual dispute to be
"genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party
opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve
the issue in favor of either side." <u>Nat'l Amusements, Inc.</u>, 43 F.3d at 735 (internal citation
omitted).

B.    <u>Tax Liens</u>

Pursuant to the Internal Revenue Code:

> If any person liable to pay any tax neglects or refuses to pay the same after
> demand, the amount (including any interest, additional amount, addition to tax, or
> assessable penalty, together with any costs that may accrue in addition thereto)
> shall be a lien in favor of the United States upon all property and rights to
> property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.  The lien typically arises "at the time the assessment is made and shall
continue until the liability for the amount so assessed . . . is satisfied . . . ." <u>Id.</u> § 6322.  However,
such a lien against real property is valid "as against any . . . holder of a security interest" in the
property only after notice of the lien has been filed with the appropriate state office (here, the

7

county register of deeds).  Id. § 6323(a), (f)(1)(A)(i).  Under certain circumstances, the government's tax lien is inferior to "security interest[s] which came into existence after tax lien filing by reason of disbursements made before the 46th day after the date of tax lien filing."  Id. § 6323(d).

The government is empowered to enforce its tax liens in various ways, including by filing suit in federal court.  Id. § 7403(a).  By filing a civil action pursuant to this provision, the government may seek "to subject any property, of whatever nature, of the delinquent [taxpayer], or in which he has any right, title, or interest, to the payment of [his unpaid] tax or liability."  Id. "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto."  Id. § 7403(b).  The federal courts are then empowered "to adjudicate all matters involved [in the action] and finally determine the merits of all claims to and liens upon the property," and to order a sale of the property and distribution of proceeds based on the court's findings regarding the parties' interests in the property.  Id. § 7403(c).

In United States v. Rodgers, 461 U.S. 677 (1983), the Supreme Court held that § 7403 authorizes judicial sale of entire properties, even where a delinquent taxpayer shares ownership of the property with an innocent third party.  The Court determined, however, that the non-delinquent owner "is entitled . . . to so much of the proceeds as represents complete compensation for the loss of" her interest in the property.  Id. at 680.  Furthermore, the Court concluded that "some limited room is left in the statute for the exercise [by the district court] of reasoned discretion" in deciding whether to authorize a forced sale of property in which a third party holds an interest.  Id. at 706.  Such discretion, the Court instructed, should be guided primarily by the following considerations:

- "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes";

- "whether the third party with a non-liable separate interest in the property would, in the normal course of events . . . , have a legally recognized expectation that [her] separate property would not be subject to forced sale by the delinquent taxpayer or his . . . creditors";

- "the likely prejudice to the third party, both in personal dislocation costs and in . . . practical undercompensation"; and

- "the relative character and value of the non-liable and liable interests held in the property."

Id. at 709-11.

III.    DISCUSSION

There is no dispute that Marciello was notified of the relevant tax assessments and failed to pay them.  As such, the government plainly has valid tax liens on "all property and rights to property" held by Marciello.  See 26 U.S.C. § 6321.  The liens arose on the dates of the relevant assessments and continue today.  Id. § 6322; see Doc. No. 63 at 2-3 (listing assessment dates). The answering defendants' objections raise only the following issues: 1) whether FFCU holds a security interest in Larkin Street; 2) whether the non-answering defendants retain any property rights in Larkin Street; 3) to what extent Marciello has an interest in Marshall Street and whether the Court should order a judicial sale of Marshall Street; and 4) how the proceeds of any sale of Marshall Street should be distributed.  Those questions will be examined in turn below.

A.    Larkin Street: FFCU's Objections

In opposing summary judgment, FFCU has objected to the government's view of FFCU's rights (or lack thereof) with respect to both properties at issue.  As to Larkin Street, FFCU argues

it holds a valid security interest in the property which, except for $18,000 in disbursements made after the government first filed notice of its assessments in May 2002, is superior to the federal tax liens.[7]  Doc. No. 69 at 5-6.  The Court disagrees.

The Larkin Note unequivocally states that Marciello's ability to receive additional disbursements "[t]hereunder" lasted only until the tenth anniversary of the agreement, i.e., until July 25, 2000.  The ten-year limit on loans made pursuant to the agreement is explicitly referenced several times in the Larkin Note, the terms of which FFCU drafted:

- "[T]he Borrower may borrow, prepay and reborrow . . . [until] the 10th anniversary of the date hereof . . . ."

- "Following the tenth anniversary hereof, no further loan shall be made to Borrower hereunder . . . ."

- Repayment is required "no later than the 20th anniversary hereof," but the period "following the 10th anniversary hereof" is designated "the payment period."

Doc. No. 63-18 at 1.  Moreover, the terms of the Larkin Note permitted FFCU to amend the agreement – to include, for example, additional disbursements made after the tenth anniversary – but advance written notice to Marciello regarding any amendment was required.  Id.  FFCU concedes that it never amended the Larkin Note.  Doc. No. 63-17 at 44-45.  Therefore, the additional amounts FFCU disbursed to Marciello after July 25, 2000 were not within the scope of the Larkin Note, the unambiguous terms of which did not encompass such loans.

The mortgage associated with the Larkin Note secured only the repayment of

---

[7]FFCU further argues that the $18,000 in loans it disbursed in late 2002 and 2003 are subordinate "only up to the dollar amount of the [government's May 2002] Notice which was $105,190.24."  Doc. No. 69 at 6.  The Court need not evaluate this contention, however, as the clear terms of the Larkin Note and the associated mortgage preclude a finding that FFCU retained any security interest in Larkin Street when the federal tax liens arose.

indebtedness incurred pursuant to the that note.  See Doc. No. 63-19 at 1.  Although nothing

prevented FFCU from lending additional sums to Marciello in 2002 and 2003, such loans were

not secured by the existing mortgage on Larkin Street.  Id.  The record before the Court reveals

the only loans that were secured by the mortgage – those occurring before July 25, 2000 – were

fully repaid by February 25, 2002.  See Doc. No. 63-24 at 8 (showing a zero balance on that

date).[8]  As such, the mortgage on Larkin Street held by FFCU was discharged as of that date.  See

Pineo v. White, 70 N.E.2d 294, 296 (Mass. 1946) ("The payment of the mortgage note[] at or

before maturity . . . terminates the interests of the mortgagee without any formal release or

discharge and revests the legal title in the mortgagor."); Faneuil Investors Grp., L.P. v. Bd. of

Selectmen, 913 N.E.2d 908, 912 (Mass. App. Ct. 2009) (same).[9]

_____

[8]The February 25, 2002 payment appears with the code "LPOF" which, the Court might
reasonably infer, reflects a "loan payoff."  See Doc. No. 63-24 at 8.  Interestingly, that payment
amount, covering the outstanding principle and interest on the Larkin Note, is equal to the first
disbursement made pursuant to the Marshall Note that same day.  Id. at 17.  Although one might
speculate as to the meaning of this coincidence, see, e.g., Doc. No. 63-17 at 51-53, there are no
facts before the Court shedding light on the subject or demonstrating that a material factual
dispute exists as to the termination of the Larkin Note and the related mortgage.

[9]FFCU advances two arguments regarding the Larkin Note which warrant little
discussion.  First, it suggests a Massachusetts statute governing "obsolete mortgages" somehow
preserved its security interest in Larkin Street.  Doc. No. 69 at 10 (citing Mass. Gen. Laws ch.
260, § 33, which limits the time within which a lender may foreclose on a mortgage).  That
statute, however, does not change the fact that full payment of the amount due on a note secured
by a mortgage discharges the mortgage.  Here, where the ten-year period for revolving
disbursements had passed and the balance of the loan had been fully repaid, the "obsolete
mortgages" statute has no application.

Second, FFCU's public policy arguments cannot trump the legal effect of the plain
language of its loan documents.  The Court acknowledges that any harm arising from FFCU's
inability to recover the balance owed on the Larkin Note through a judicial sale of Larkin Street
might be borne by FFCU's members.  See Doc. No. 69 at 11-12.  That harm, however, was
within FFCU's power to prevent, had it ceased to disburse loans as contemplated in the note it
drafted and issued, or had it amended the note and mortgage to encompass the later loans.  The
government and its taxpayers were in no position to prevent this harm, nor should they shoulder

11

Because the security interest FFCU once held in Larkin Street terminated months before the government filed notice of its tax liens, as a matter of law, FFCU is not entitled to proceeds from the judicial sale of Larkin Street.

B.      Larkin Street: The Non-Appearing Defendants

In its complaint, the government alleged that Marciello's mother and brother, AmEx, and Citizens each had interests in Larkin Street. See Doc. No. 45 at ¶¶ 20, 22.  It alleged Marciello's mother and brother owned the property with Marciello as joint tenants – a fact which is supported by the deed and is undisputed for purposes of the instant motion, Doc. No. 63 at 4; Doc. No. 63-16 – and that AmEx and Citizens had a judgment lien and a mortgage lien, respectively.  Doc. No. 45 at ¶¶ 20, 22.  None of these four defendants have responded to the pending motion, answered the complaint, or appeared in this action.  As such, the government seeks a default judgment declaring that the non-appearing defendants "have no rights, titles, claims, liens, and/or interests" in Larkin Street.  Doc. No. 64 at 13-14.

For factual, legal, and equitable purposes,[10] AmEx and Citizens, as potential lien holders, stand in very different shoes than Marciello's mother and brother, who possess deeded interests in the property.  As to the former, the record contains no proof of the validity or amount of their liens, and they have failed to appear and assert their liens here.  See Doc. Nos. 14, 48 (proof of service on AmEx and waiver of service by Citizens demonstrating both parties were properly notified of the action); Doc. Nos. 24, 53 (notices of entry of default, to which the defendants have

its burden.  Cf. Rodgers, 461 U.S. at 694 (tax laws reflect strong public policy "in favor of the prompt and certain collection of delinquent taxes").

[10]"A § 7403 proceeding is by its nature a proceeding in equity . . . ."  Rodgers, 461 U.S. at 708.

not objected).  As the government notes, there are many reasons why lien holders like AmEx and

Citizens might elect not to participate in proceedings such as these, see Doc. No. 79 at 2, and the

Court is neither required nor inclined to divine which reason applies here.  Default judgments,

therefore, are entered against AmEx and Citizens, extinguishing any interests they might have

claimed in either property.

Marciello's mother and brother, however, hold more than a security interest in Larkin

Street.  They are joint tenants named on the deed to the property, and have been since 1978.  Doc.

No. 63-16.  Although they have not appeared to defend their interests in this action, the

government's suggestion that they have thus forfeited their joint tenancies (and any

compensation therefor) is inequitably harsh.  The Amended Complaint fails to request the

termination of their ownership interests or otherwise place them on notice that the government's

claims placed their ownership interests in jeopardy of forfeiture.  See generally Doc. No. 45.

Moreover, the government cites no case in which any federal court has imposed the result the

government seeks here under analogous circumstances, and this Court is aware of none.[11]

Indeed, the decision cited by the government that most closely parallels the facts presented here

---

[11]Both cases the government cites as examples in which courts have stripped innocent
property owners of their interests without compensation are inapposite.  In United States v.
Zimmerman, 2012 WL 3264876 (3d Cir. Aug. 13, 2012), the taxpayer and his wife first
participated in the action, then fired their counsel, defied court orders, and obstructed the
discovery process.  After the district court entered a default judgment and ordered distribution of
sale proceeds without compensating the wife, the court of appeals concluded no timely appeal
had been filed and noted that the spouse's interest, "if any," was "an unresolved question."  Id. at
*5.  In United States v. Rigler, 2012 WL 3528097, at *1-3 (S.D. Iowa Aug. 16, 2012, the court
did not examine the non-answering spouse's interest in property that was once jointly owned by
the taxpayer and his wife, but purportedly had been transferred to a trust that was the taxpayer's
alterego before the federal tax liens arose.  Here, the interests of the non-answering parties are
undisputed and are apparent from the relevant deed.

undermines the government's position.  In <u>United States v. Parr</u>, the court found that although the wife's failure to appear and present "evidence of any prejudice that might affect her interest" meant that a judicial sale was appropriate under <u>Rodgers</u>, it did not warrant her interest in the property going uncompensated following the sale.  2011 WL 4737066, at *5 (W.D. Va. Oct. 6, 2011).

The reasoning in <u>Parr</u> is persuasive, and its result equitable.  Like the taxpayer's wife in <u>Parr</u>, Marciello's mother and brother have not appeared to present evidence regarding the <u>Rodgers</u> factors.[12]  As such, the Court "need not engage in . . . prospective balancing on [their] behalf," and may "find instead that the government's financial interest in acquiring the back taxes owed by Mr. [Marciello] is sufficient to order a sale [of Larkin Street] under <u>Rodgers</u>." <u>Parr</u>, 2011 WL 4737066, at *5.  However, Marciello's mother and brother are nonetheless entitled to compensation for their joint tenancies in Larkin Street, which for each of them will equate to one third of the sale proceeds remaining after costs and local taxes are paid.  <u>See</u> <u>Rodgers</u>, 461 U.S. at 680 (innocent owners are entitled to compensation for the loss of their property interests).

## C.    <u>Marshall Street: Mrs. Marciello's Objections</u>

In her brief, Marciello's wife does not seriously contest the fact that Marciello had a property interest in Marshall Street at the time the government's tax liens arose.  She concedes

---

[12]The record demonstrates both Marciello's mother and brother were notified of the action and of the entry of default against them.  <u>See</u> Doc. Nos. 10, 11, 22, 23; <u>see also</u> Doc. No. 77-4 (correspondence from an attorney purporting to represent Marciello's mother and brother attaching a draft motion that was never filed).  Although there may be a question regarding the competency of Marciello's mother, <u>see</u> Doc. No. 69-1 at 47-48, it appears as though Marciello's brother acts as her guardian, <u>see id.</u> at 35-37.  He has been notified of this action and has failed to assert her interests or his own.

that the deed to the property includes him as a "joint tenant[], with the right of survivorship,"

Doc. No. 63-20, and she does not dispute that the government's federal tax liens therefore

attached to Marshall Street.[13]  See generally Doc. No. 74.  The thrust of her opposition, rather, is

aimed at urging the Court that a trial is necessary before it can determine whether to exercise its

equitable discretion and refuse to order a sale of Marshall Street (or, at least, refuse to order an

immediate sale), notwithstanding Marciello's interest therein.  Id.  Because Mrs. Marciello has

made a demonstration of prejudice sufficient to permit a reasonable factfinder to conclude the

Rodgers factors balance in her favor, summary judgment is inappropriate with respect to

Marshall Street.

     Additional facts are necessary before engaging in a discussion of the Rodgers factors.[14]

Mrs. Marciello is sixty-five years old.  She and her former husband built Marshall Street in 1983,

and she has lived there ever since.  She raised three children there.  For more than twenty-five

years, Mrs. Marciello alone has made all mortgage payments on Marshall Street.  When she and

Marciello married in 1996, they maintained separate finances and bank accounts, and they

---

     [13]Although Mrs. Mraciello fleetingly suggests that Marciello "has no interest at all," Doc. No. 74 at 12, and that his "interest in the home, if any, is minimal," Doc. No. 73 at 5, such comments are made only in the context of arguments regarding the Court's equitable discretion and application of the Rodgers factors, or in addressing how proceeds of a judicial sale should be divided.  To the extent she claims Marciello's legal status as a joint tenant, as reflected by the deed, is undermined by equitable factors she has identified (e.g., her exclusive responsibility for mortgage payments, etc.), she has cited no authority for such a finding, and the Court is aware of none.

     [14]These facts are set forth in Mrs. Marciello's opposition, her affidavit, and her deposition testimony.  Doc. No. 73 at 2-4; Doc. Nos. 74-4, 77-1.  In addition to denying knowledge of many of them, the government claims they are "immaterial."  See Doc. No. 77 at 2-6.  Where the Court is tasked with making an equitable determination utilizing factors as broad as "likely prejudice to the third party," Rodgers, 461 U.S. at 711, such facts are material, notwithstanding the government's contrary assertion.

usually filed separate tax returns.  Mrs. Marciello granted Marciello an interest in the property

only at the suggestion of Century Bank when she sought to refinance her mortgage in order to

make repairs on the home.  The deed reflects Marciello paid his wife one dollar in exchange for

the joint tenancy.  Doc. No. 63-20.  When she granted Marciello an interest in the home in 1998,

Mrs. Marciello was not aware that he already had begun to accrue unpaid federal tax liability.

Marshall Street includes a separate rental unit, which provides income of $900 per month.  Mrs.

Marciello is currently working, with a total annual income of approximately $120,000, but she

hopes to retire in the near future.  She and Marciello plan to file for divorce and, in connection

therewith, Mrs. Marciello expects to become the sole owner of Marshall Street.  Marciello no

longer resides there.

       An informed assessment of the first <u>Rodgers</u> factor is impossible on the record as it

currently stands.  Common sense dictates that a forced sale of only Marciello's interest in

Marshall Street likely would yield proceeds substantially lower than half of the value of the

property sold as a whole.  <u>See</u> <u>Rodgers</u>, 461 U.S. at 694 (noting separate interests in property

may be worth "significantly less than the sum of their parts").  Based on the estimated value of

Marshall Street provided by the government, and accounting for the amount of the superior liens

held by Century Bank and FFCU, Marciello's interest in the home probably would satisfy less

than half of the total federal tax liens, even after a sale of the entire property.  <u>See</u> Doc. No. 77-2

(averring the fair market value of the home is approximately $330,000, and opining it would be

bought at a judicial sale for approximately $265,000).  The record, however, contains no

authoritative evidence regarding the value of Larkin Street.[15]  As discussed above, proceeds of

the judicial sale of Larkin Street will be divided in thirds to compensate Marciello's mother and

brother, but the Court is left to speculate about how much of Marciello's tax indebtedness will be

accounted for by his one-third share of the proceeds.  Cf. Rodgers, 461 U.S. at 710 n.40

(observing there might be no prejudice to the government where the liens "could be satisfied out

of other property to which [the taxpayer] had sole and complete title").  Although the first factor

appears likely to favor the government to some degree, the record does not resolve how much

weight should be assigned to it.[16]

There does not appear to be a dispute regarding the second factor, which does not favor

an exercise of discretion here.  Whatever her motivations, Mrs. Marciello admittedly "deeded an

interest in her home" to Marciello in 1998.  Doc. No. 74 at 8.  As a result, she lacks "a legally

recognized expectation" that her home would be beyond the reach of Marciello's creditors.  See

Rodgers, 461 U.S. at 710-11.  She supports her argument to the contrary by relying on two

---

[15]The government submitted only its own counsel's declaration stating he used three real estate websites to ascertain the current value of Larkin Street, and found estimates ranging from $240,000 to $396,000.  Doc. No. 77-3 at ¶ 4.  Even assuming such a submission were an appropriate way to establish a material fact, the wide range of values offered does little to settle the question of how much Larkin Street is worth.

[16]The government and Mrs. Marciello disagree about how the burden of proving the Rodgers factors should be assigned.  See, e.g., Doc. No. 77 at 11.  The government is correct that it need not prove, at the outset in every case, that the Rodgers factors favor a judicial sale.  See United States v. Winsper, 680 F.3d 482, 489 (6th Cir. 2012) (explaining the factors do not limit the government's discretion to foreclose, but rather guide the court's discretion not to order a sale).  However, as the moving party, the government bears the burden assigned to any party seeking summary judgment.  As a result, once an innocent third-party with a property interest at stake opposes the government's motion with evidence demonstrating a genuine dispute about whether the Rodgers factors warrant an exercise of discretion – as Mrs. Marciello has here – the government has some burden to respond and show that no such dispute exists.

assertions set forth in her own affidavit, both of which might be relevant to the third factor,

discussed below, but neither of which alter Mrs. Marciello's "legally recognized expectations."

First, Mrs. Marciello states she would not have deeded Marciello an interest in Marshall Street if

she had known he was accruing – and would continue to accrue – unpaid federal tax liability.

Doc. No. 74 at 8.  Second, she alleges she will acquire Marciello's interest in the home once she

and Marciello institute divorce proceedings.  Id. at 8-9.  Although both of these assertions may be

true, neither would permit a factfinder to conclude Mrs. Marciello reasonably could have

believed that Marshall Street "would not be subject to forced sale by [Marciello] or his . . .

creditors."  Rodgers, 461 U.S. at 710-11 (comparing the "almost absolute" insulation against

forced sale offered by Texas homestead laws with other less rigorous protections characterizing

"usual cotenancy arrangement[s]").[17]

Like the first factor, the third consideration is difficult to weigh on the current record.

Although it almost certainly favors Mrs. Marciello, a trial will be required to determine to what

extent it favors her, and how it balances against the government's interest at issue in the first

factor.  As a sixty-five-year-old woman facing the loss of her home of nearly thirty years, Mrs.

Marciello can be expected to suffer significant emotional distress, along with the practical

detriment stemming from dislocation, loss of an income-producing rental unit, and likely under-

compensation.  See Rodgers, 461 U.S. at 704, 711; Doc. No. 74 at 10; see also Doc. No. 77-2

---

[17]As the government notes, Massachusetts law might recognize some expectation that the property would not be sold if Marciello and his wife held it as tenants by the entirety, rather than as joint tenants.  See Mass. Gen. Laws ch. 184, § 7; id. ch. 209, § 1.

Furthermore, any promise by Marciello to transfer his interest to his wife in the future would have no legal effect on the operation of the federal tax liens.  See United States v. Murray, 217 F.3d 59, 62-63 (1st Cir. 2000) (also noting a transfer occurring "after the government's lien had attached" to the taxpayer's property interest would not eliminate the lien).

(stating a forced judicial sale can be expected to command only 80% of fair market value).  The government argues that all prejudice besides the emotional harm is mitigated here by Mrs. Marciello's relatively healthy income and the availability of affordable replacement housing (whether rented or purchased) in the same community.  Doc. No. 77 at 14-16.  The issue, however, is not as simple as the government suggests.

First, the practical impact an order for judicial sale would have on Mrs. Marciello will depend not only on her income, but also on her assets and liabilities.  For example, if she has $10 million in savings, she might easily avoid a sale by settling with the government and paying an amount equal to Marciello's share of any anticipated sale.  If, however, she has large amounts of personal debt and no savings account, she might be unable to reach such a settlement and would be compelled to relocate.  Second, and relatedly, although the government suggests there are numerous housing options available to Mrs. Marciello should she be compelled to relocate, whether such options mitigate the detriment incurred during relocation will depend on her overall assets and liabilities (which will impact, for example, her ability to obtain a mortgage when buying a new home).  Third, her ability to rent or to buy another home may depend not only on her present income, but also on an assessment of her ability to continue to earn such an income given her age.  Finally, the question of emotional harm – which alone could be quite significant – will require an assessment of Mrs. Marciello's testimony by a factfinder.  The third factor, therefore, cannot be fully assessed on the record as it now stands.

Notwithstanding Sandra's attempts to characterize her interest in Marshall Street as more significant than Marciello's, the fourth factor is most appropriately viewed as neutral here.  In Rodgers, as well as cases in other jurisdictions applying it, the final factor calls for a comparison

19

of the nature of legal property interests at stake.  See Rodgers, 461 U.S. at 711 (citing as examples interests that are not "present possessory interest[s]," and comparing them to "fee interest[s] . . . worth 99% of the value of the property"); see, e.g., United States v. Winsper, 680 F.3d 482, 492-93 (6th Cir. 2012) (deeming the fourth factor neutral where a delinquent taxpayer and his wife had "identical rights in the property . . . under [state] law").  Here, Marciello and his wife hold equal and identical interests in Marshall Street.

Because Mrs. Marciello has made a showing sufficient to raise a genuine factual issue regarding the proper assessment of the two non-neutral Rodgers factors, summary judgment is inappropriate here.[18]

### D.    Marshall Street: FFCU's Objections

The government agrees that FFCU has a security interest – specifically, a second mortgage  – in the entire Marshall Street property.  Doc. No. 64 at 12.  The only dispute remaining is to what extent FFCU's interest is superior to the government's tax liens.[19]

Both Marciello and his wife own Marshall Street, and both are borrowers and mortgagors for purposes of the Marshall Note.  Doc. Nos. 63-20, 63-22, 63-23.  FFCU apparently ignores Mrs. Marciello's property interest in the home, as well as her status as a party to the Marshall Note.  See Doc. No. 69 at 6-7 (suggesting a distribution of sale proceeds that omits Marciello's

---

[18]The Court notes that the Rodgers decision contemplates that the factors it identified might in some cases justify an exercise of equitable discretion short of total refusal to order a sale.  See Rodgers, 461 U.S. at 709 n.39 (noting "a forced sale may . . . be temporarily postponed, or made subject to an upset price, in order to do justice in an individual case").  Thus, should the Court conclude a sale is appropriate, it may further consider whether the facts developed at trial warrant staying the sale for a period of time, as Mrs. Marciello alternatively requests.  Doc. No. 73 at 6-7.

[19]This dispute will become meaningful only if the Court orders a sale of Marshall Street.

wife altogether).  Her interest, however, necessarily would have to be reflected in the distribution

of any proceeds flowing from a judicial sale of Marshall Street.  Whereas the government's lien

attached only to Marciello's interest in the property, the value of FFCU's security interest – like

any unpaid property taxes and the balance of the Century Bank mortgage – would be shared

equally by Marciello and his wife.  Cf. Doc. No. 35 (ordering, by agreement, that the superior

liens for property taxes and the Century Bank mortgage are to be satisfied from the total proceeds

of any sale, and not from the share associated with Marciello's half alone).

   The government filed notice of its liens for tax years 1996, 1999, and 2000 on May 7,

2002.  Doc. No. 63 at 4.  Pursuant to 26 U.S.C. § 6323(a) and (d), FFCU has a security interest in

Marshall Street that is superior to the government's liens, but only for those disbursements made

by FFCU on or before June 21, 2002 (i.e., within forty-five days of the notice).  The undisputed

balance due on the Marshall Note as of that date was $11,419.38.  Doc. No. 63 at 7.  As such,

after the Court's prior order regarding distribution of sale proceeds is satisfied (i.e., after payment

of sale expenses, local property taxes, and the Century Bank mortgage), FFCU would be entitled

to repayment of $11,419.38.  Thereafter, the government's liens attached to Marciello's half of

the property, so the remaining proceeds would have to be split in half for further distribution

among the government, FFCU, Marciello, and his wife.

   The only lien encumbering the half of any remaining proceeds attributable to Mrs.

Marciello's interest is FFCU's mortgage lien securing the Marshall Note.  The total amount of

that lien as of November 1, 2012, was $64,027.12.  Doc. No. 71 at 1. That amount, less the

$11,419.38 already accounted for above, would be divided and borne equally by Marciello and

his wife.  As such, from Mrs. Marciello's half of the remaining proceeds, FFCU would be

entitled to the first $26,303.87, plus any additional amounts accrued after that date which are allowable under 26 U.S.C. § 6323(e), and Mrs. Marciello would be entitled to the rest.[20]

The distribution of any remaining proceeds attributable to Marciello's interest is more complicated. Those proceeds would be subject to division among the government, FFCU, and Marciello, as follows. First, the government's tax liens for amounts assessed related to taxable years 1996, 1999, and 2000 are superior to FFCU's mortgage lien for amounts disbursed after June 21, 2002. Those liens totaled $235,083.25 as of October 1, 2012. See Doc. No. 63-1 at 3 (showing amounts due for each tax year, including $32,203.84 for 1996, $98,393.02 for 1999, and $104,486.39 for 2000).[21] After those portions of the government's liens are satisfied, FFCU would be entitled to $26,303.87 (the remainder of the amount due on the Marshall Note), plus any additional amounts accrued after November 1, 2012 which are allowable under 26 U.S.C. § 6323(e). Next, the government would collect for its liens arising from assessments for taxable years 2002 and 2005. And finally, if any proceeds remain, Marciello would be entitled to them.

IV.    CONCLUSION

For the foregoing reasons, I recommend the government's Motion for Summary Judgment (Doc. No. 63) be ALLOWED in part and DENIED in part. Sandra Marciello has established that genuine issues of material fact exist which preclude a determination at this time

---

[20]"The rest," according to the government's estimate, is expected to be approximately $80,000. Doc. No. 77 at 15.

[21]Although FFCU suggests the government's liens have priority only in the amounts reflected by the notices filed on May 7, 2002, see Doc. No. 69 at 5-7, that argument ignores the plain language of 26 U.S.C. § 6321, which defines the government's lien to include "any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto." FFCU has cited no authority for limiting the government's priority to the amount stated in its notice, without including related interest and penalties accruing thereafter.

regarding whether the Court should order a judicial sale of the Marshall Street property and, if such a sale is ordered, whether it should be postponed.  In that regard, the government's motion should be DENIED.  In all other respects, I recommend that the motion be ALLOWED, and partial judgment be ENTERED as follows:[22]

1.  The government holds valid and subsisting federal tax liens associated with the unpaid federal income taxes, penalties, and interest, owed by the defendant Ronald Marciello for taxable years 1996, 1999, 2000, 2002, and 2005, in the amount of $262,048.30, plus statutory additions accruing from and after October 2, 2012, including interest pursuant to 26 U.S.C. §§ 6601, 6621, 6622, and 28 U.S.C. § 1961(c);

2.  Those federal tax liens already have been reduced to judgment, Doc. No. 35, and have attached to all property and rights to property belonging to Ronald Marciello;

3.  The Larkin Street property (as described in Doc. No. 63-16) is owned equally by Ronald, Grace, and Gregory Marciello and, therefore, the government's tax liens have attached to one-third of such real property;

---

[22]The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).

4.      The Marshall Street property (as described in Doc. No. 63-20) is owned equally by Ronald and Sandra Marciello and, therefore, the government's tax liens have attached to one-half of such real property;

5.      Based on their failure to appear in this action to demonstrate the validity and amount of any liens, defendants AmEx and Citizens have no rights, titles, claims, liens, and/or interests in either property or in the proceeds from the judicial sales of the properties;

6.      Based on their failure to appear in this action, defendants Grace and Gregory Marciello have forfeited their right to object to a judicial sale of Larkin Street or to the distribution of the proceeds of the sale in the manner set forth below;

7.      The government's tax liens shall be enforced pursuant to 26 U.S.C. §§ 7402(a) and 7403(c), through the judicial sale of the entire Larkin Street property, without any right of redemption and free and clear of all rights titles, liens, claims, and interests of the parties hereto;

8.      The proceeds of the judicial sale of the Larkin Street property shall be distributed as follows: *first*, for the expenses of the sale, including any expenses incurred and paid to secure or maintain the property; *second*, to the City of Revere, in accordance with 26 U.S.C. § 6323(b)(6), for any reasonable and valid real property tax or other municipal assessments against the property that may be outstanding, unpaid, and owing to the City at the time of the sale; and *finally*, the remaining proceeds shall be divided and distributed as follows:

a.      One third to Grace Marciello;

24

    b.      One third to Gregory Marciello;

    c.      One third as follows: *first,* to the government for the taxes, penalties, and interest owed by Ronald Marciello for taxable years 1996, 1999, 2000, 2002, and 2005, as set forth above; *second*, the remainder, if any, to Ronald Marciello;

9.    The proceeds of a judicial sale of the Marshall Street property, if such a sale is ordered, should be distributed as follows: *first*, for the expenses of the sale, including any expenses incurred and paid to secure or maintain the property; *second*, to the City of Revere, in accordance with 26 U.S.C. § 6323(b)(6), for any reasonable and valid real property tax or other municipal assessments against the property that may be outstanding, unpaid, and owing to the City at the time of the sale; *third*, to Century Bank in the amount of $39,308.75 as of November 16, 2012, plus any additional amounts accrued after that date which are allowable under 26 U.S.C. § 6323(e); *fourth*, to FFCU in the amount of $11,419.38, plus any additional amounts accrued after June 21, 2002 which are allowable under 26 U.S.C. § 6323(e); and *fifth*, the remaining proceeds shall be divided and distributed as follows:

    a.      One half as follows: *first*, to FFCU in the amount of $26,303.87 as of November 1, 2012, plus any additional amounts accrued after that date which are allowable under 26 U.S.C. § 6323(e); *second*, the remainder, if any, to Sandra Marciello;

    b.      One half as follows: *first*, to the government for the taxes, penalties, and

interest owed by Ronald Marciello for taxable years 1996, 1999, and 2000, as set forth above; *second*, to FFCU in the amount of $26,303.87 as of November 1, 2012, plus any additional amounts accrued after that date which are allowable under 26 U.S.C. § 6323(e); *third*, to the government for the taxes, penalties, and interest owed by Ronald Marciello for taxable years 2002 and 2005, as set forth above; and *finally*, the remainder, if any, to Ronald Marciello.

For the Court's convenience, in the event it approves and adopts the undersigned's recommendation in its entirety, a proposed partial judgment consistent with the above is attached.


    /s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )        Civil No. 09-12089-JLT
                                    )
RONALD R. MARCIELLO, et al.,        )
                                    )
         Defendants.                )
_____)

PARTIAL JUDGMENT

_____ __, 2013

TAURO, J.

The Court has determined that partial judgment should be entered consistent with the

January 28, 2013 Report and Recommendation of Chief Magistrate Judge Sorokin.  Accordingly,

IT IS ORDERED as follows:

1.      The government holds valid and subsising federal tax liens associated with the unpaid

        federal income taxes, penalties, and interest, owed by the defendant Ronald Marciello for

        taxable years 1996, 1999, 2000, 2002, and 2005, in the amount of $262,048.30, plus

        statutory additions accruing from and after October 2, 2012, including interest pursuant to

        26 U.S.C. §§ 6601, 6621, 6622, and 28 U.S.C. § 1961(c);

2.      Those federal tax liens already have been reduced to judgment, Doc. No. 35, and have

        attached to all property and rights to property belonging to Ronald Marciello;

3.      The Larkin Street property (as described in Doc. No. 63-16) is owned equally by Ronald,

Grace, and Gregory Marciello and, therefore, the government's tax liens have attached to one-third of such real property;

4.   The Marshall Street property (as described in Doc. No. 63-20) is owned equally by Ronald and Sandra Marciello and, therefore, the government's tax liens have attached to one-half of such real property;

5.   Based on their failure to appear in this action to demonstrate the validity and amount of any liens, defendants AmEx and Citizens have no rights, titles, claims, liens, and/or interests in either property or in the proceeds from the judicial sales of the properties;

6.   Based on their failure to appear in this action, defendants Grace and Gregory Marciello have forfeited their right to object to a judicial sale of Larkin Street or to the distribution of the proceeds of the sale in the manner set forth below;

7.   The government's tax liens shall be enforced pursuant to 26 U.S.C. §§ 7402(a) and 7403(c), through the judicial sale of the entire Larkin Street property, without any right of redemption and free and clear of all rights titles, liens, claims, and interests of the parties hereto;

8.   The proceeds of the judicial sale of the Larkin Street property shall be distributed as follows: *first*, for the expenses of the sale, including any expenses incurred and paid to secure or maintain the property; *second*, to the City of Revere, in accordance with 26 U.S.C. § 6323(b)(6), for any reasonable and valid real property tax or other municipal assessments against the property that may be outstanding, unpaid, and owing to the City at the time of the sale; and *finally*, the remaining proceeds shall be divided and distributed as follows:

a.   One third to Grace Marciello;

      b.      One third to Gregory Marciello;

      c.      One third as follows: *first,* to the government for the taxes, penalties, and interest owed by Ronald Marciello for taxable years 1996, 1999, 2000, 2002, and 2005, as set forth above; *second*, the remainder, if any, to Ronald Marciello;

9.      The proceeds of a judicial sale of the Marshall Street property, if such a sale is ordered, should be distributed as follows: *first*, for the expenses of the sale, including any expenses incurred and paid to secure or maintain the property; *second*, to the City of Revere, in accordance with 26 U.S.C. § 6323(b)(6), for any reasonable and valid real property tax or other municipal assessments against the property that may be outstanding, unpaid, and owing to the City at the time of the sale; *third*, to Century Bank in the amount of $39,308.75 as of November 16, 2012, plus any additional amounts accrued after that date which are allowable under 26 U.S.C. § 6323(e); *fourth*, to FFCU in the amount of $11,419.38, plus any additional amounts accrued after June 21, 2002 which are allowable under 26 U.S.C. § 6323(e); and *fifth*, the remaining proceeds shall be divided and distributed as follows:

      a.      One half as follows: *first*, to FFCU in the amount of $26,303.87 as of November 1, 2012, plus any additional amounts accrued after that date which are allowable under 26 U.S.C. § 6323(e); *second*, the remainder, if any, to Sandra Marciello;

      b.      One half as follows: *first*, to the government for the taxes, penalties, and interest owed by Ronald Marciello for taxable years 1996, 1999, and 2000, as set forth above; *second*, to FFCU in the amount of $26,303.87 as of November 1, 2012, plus any additional amounts accrued after that date which are allowable under 26 U.S.C. § 6323(e); *third*, to the government for the taxes, penalties, and interest

owed by Ronald Marciello for taxable years 2002 and 2005, as set forth above;

and *finally*, the remainder, if any, to Ronald Marciello.

SO ORDERED.

_____

Joseph L. Tauro
United States District Judge